UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TONZANIA RAYFORD, individually and on
behalf of all others similarly situated,

        Plaintiff,                               Case No. 1:23-cv-13012

v.                                                 Honorable Thomas L. Ludington
                                                        United States District Judge

MOBILE PHLEBOTOMY OF CENTRAL
MICHIGAN LLC, and AMANDA BREASBOIS

        Defendants.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUPERVISED NOTICE AND DIRECTING NOTICE**

Plaintiff Tonzania Rayford worked as a phlebotomist for Defendant Mobile Phlebotomy of Central Michigan LLC (MPCM) and brought a collective action alleging MPCM and its owner, Defendant Amanda Breasbois, violated the Fair Labor Standards Act by misclassifying its phlebotomists as "independent contractors" and not paying them overtime wages. Currently before this Court is Plaintiff's Motion for Supervised Notice to the proposed collective of current and former MPCM phlebotomists who reside in Michigan, were classified as "independent contractors," and did not receive overtime wages. Because Plaintiff has shown a strong likelihood that she is similarly situated to the proposed FLSA collective, her motion for supervised notice will be granted.

**I.**

Defendant Mobile Phlebotomy of Central Michigan LLC (MPCM) contracts with phlebotomists to provide blood work services to hospitals and healthcare providers throughout central Michigan. ECF No. 9 at PageID.32. MPCM advertises itself as offering "professional, safe,

and reliable lab services" throughout Mid-Michigan counties but notes its commitment to providing "blood work care anywhere." *See About Us: Who We Are*, MOBILE PHLEBOTOMY OF CENTRAL MICHIGAN, https://mpcmservices.com/about-us (last visited March 26, 2024) [https://perma.cc/XEU5-KJWP].

Plaintiff Tonzania Rayford worked as a phlebotomist at MPCM from October 2022 until April 2023. ECF No. 9-4 at PageID.66. On October 9 2023, Plaintiff filed a Fair Labor Standards Act (FLSA) collective action Complaint in the United States District Court for the Western District of Michigan alleging MPCM—and its owner, manager, and registered agent Amanda Breasbois—failed to pay Plaintiff and other similarly situated phlebotomists time-and-a-half for overtime work. *Rayford v. Mobile Phlebotomy Of Central Michigan LLC*, CN 23-CV-01067 (W.D. Mich. 2023), ECF No. 1. Importantly, the employment contracts signed by MPCM and its phlebotomists expressly classified the phlebotomists as "*independent contractors*" rather than *employees*. *See* ECF No. 10 at PageID.201 (emphasis added). Plaintiff's Complaint, however, alleges this was a "misclassification" because "the nature of the services" that the phlebotomists perform "and the manner in which they perform these services, make it clear that they are employees" for the purposes of the FLSA. Comp., *Rayford v. Mobile Phlebotomy Of Central Michigan LLC*, No. 23-CV-01067 (W.D. Mich. Oct. 9, 2023), ECF No. 1 at ¶ 12, 21, 25. Thus, Plaintiff describes the collective as:

> all individuals who in the State of Michigan . . . who have provided phlebotomy services for [MPCM], and who were treated as independent contractors, and thus denied overtime pay for hours worked greater than forty (40) hours per week.

*Id.* at ¶ 8.

In November 2023, the Parties stipulated to transfer the case from the Western District of Michigan to this Court for convenience, noting both MPCM and Breasbois reside in Saginaw

County, and noting that the "vast majority" of MPCM's 32 phlebotomists lived in this District, too. ECF Nos. 12; 13; *see also* ECF No. 9-9 at PageID.83, 92–93. Once transferred, Plaintiff filed notice of the following Opt-in Plaintiffs:

> (1) DeZandria King, who worked as an MPCM phlebotomist from January to February 2023 and alleges she regularly worked more than 40 hours per week but did not receive overtime pay. *See* ECF Nos. 5-1 at PageID.7; 9-5.
>
> (2) Molly Kroening, who worked as an MPCM phlebotomist from March to October 2022 and alleges she regularly worked more than 40 hours per week but did not receive overtime pay. *See* ECF Nos. 5-1 at PageID.8; 9-6.
>
> (3) Kaleigh Sobanski, who worked as an MPCM phlebotomist and, during "certain weeks," worked more than 40 hours but allegedly did not receive overtime pay. ECF No. 5-1 at PageID.9
>
> (4) Jason Hoppe, who worked as an MPCM phlebotomist and, during "certain weeks," worked more than 40 hours but allegedly did not receive overtime pay. ECF No. 5-1 at PageID.10.

Plaintiff filed a motion for supervised notice pursuant to 29 U.S.C. § 216(b) on December 12, 2023. ECF No. 9. Defendants responded three days later. ECF No. 10. And Plaintiff filed her Reply in support the following week. ECF No. 13.

**II.**

The FLSA requires employers to pay a federal minimum wage and overtime to certain types of employees, 29 U.S.C. §§ 206(a), 207(a), and allows these employees to recover unpaid wages if an employer violates these requirements. *Id.* § 216(b). Specifically, the FLSA provides employees with a right of action to sue an employer for alleged violations, both individually and on behalf of similarly situated employees. *Id.* § 216(b). But "[n]o employee shall be a party . . . to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* Thus, "assuming they are 'similarly

situated'—other employees become parties to an FLSA suit only if they affirmatively chose to do so." *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1007 (6th Cir. 2023).

Although plaintiffs normally "come to the courts, rather than vice versa[,]" the Supreme Court has interpreted the FLSA to grant federal courts an "implied judicial power, in appropriate cases, to facilitate notice of FLSA suits to potential plaintiffs." *Id.* (internal quotations omitted) (citing *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989). But the Court provided little guidance in how this implied power should be implemented, and did not clarify to what degree potential plaintiffs must be similarly situated to the filing plaintiff in order to receive facilitated notice. *See id.* This lack of guidance was especially concerning because notice decisions in FLSA collective actions are often practically dispositive, as the decision to notify potential employee-plaintiffs "expand[s] the plaintiffs' ranks a hundredfold" and induces employer defendants to settle. *Id.*

The Sixth Circuit provided clarity in 2023. Although district courts should not "determine—in abstentia—whether other employees are 'actually' similarly situated to the original plaintiff[,]"[1] district courts should require more than a "'modest showing' . . . of similarity" and should, "[t]o the extent practicable," approve notice only to employees who "are in fact similarly situated." *Id.* at 1010. Accordingly, "for a district court to facilitate notice of an FLSA suit to other employees, the plaintiff[] must show a strong likelihood that those employees are similarly situated to the plaintiffs themselves." *Id.* at 1011. While this "strong likelihood" showing requires "a showing greater than the one necessary to create a genuine issue of fact," it requires something "less than the one necessary to show a preponderance." *Id.* This "strong

---

[1] Indeed, as the Sixth Circuit recognized, a district court cannot conclusively determine whether putative FLSA plaintiffs are, in fact, similarly situated to the original plaintiffs due to numerous factual issues uniquely known to the putative plaintiffs who are, at the time, "in no way present in the case." *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1010 (6th Cir. 2023).

likelihood" of similarity is satisfied when a plaintiff alleges a single FLSA-violating policy, "and that proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Dove v. Corewell Health*, No. 1:23-CV-182, 2023 WL 6548556, at *2 (W.D. Mich. Oct. 6, 2023); *see also Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1012 (6th Cir. 2023) ("The very point of the 'similarly situated' inquiry is to determine whether the merits of other-employee claims would be similar to the merits of the original plaintiffs' claims—so that collective litigation would yield 'efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.'" (quoting *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989))).

**III.**

Plaintiff has shown a strong likelihood that MPCM's phlebotomists are similarly situated to her. Indeed, Plaintiff alleges a "single-FLSA violating policy"—that Defendants misclassify their phlebotomists as independent contractors when they work as employees and, as a result, violate the FLSA by not paying these employees time-and-a-half for overtime work. *See* 29 U.S.C. § 207(a)(1) ("[N]o employer shall employee any . . . employee[] . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess . . . at a rate not less than one and one-half times the regular rate at which he is employed.") Proof of this policy or Defendants' conforming conduct would, thus, prove an FLSA violation as to *all* members of the proposed collective—those phlebotomists misclassified as "independent contractors" who did not receive time-and-a-half for overtime work. Plaintiff's Motion for Supervised Notice alleges the collective is similarly situated *because* (1) they worked to provide phlebotomist services to hospitals and healthcare providers; (2) they were misclassified as independent contractors; (3) they were not paid one and-a-half times their normal hourly rate when they worked in excess of 40

hours per week; and (4) they were subject to the same challenged pay policies and practices alleged in the Complaint. ECF No. 9 at PageID.36, 38.

To support these allegations, Plaintiff provided her own declaration, ECF No. 9-4, and the declarations of Opt-in Plaintiff King, ECF No. 9-5, and Opt-in Plaintiff Kroening. ECF No. 9-6. Plaintiff, King, and Kroening all "regularly worked more than 40 hours a week" but "were not paid time-and-a-half" for "overtime hours." ECF Nos. 9-4 at PageID.66; 9-5 at PageID.68; 9-6 at PageID.70. Further, although MPCM's Independent Contractor Staffing Agreement labeled its phlebotomists as "independent contractors" who set their own schedules, *see* ECF No. 10 at PageID.201–02, Plaintiff, King, and Kroening all claim—under the penalty of perjury—that they worked as hourly employees, "could not set [their] own schedule," and "could not chose [the] jobs or tasks [they] preform[ed]." ECF Nos. 9-4 at PageID.66; 9-5 at PageID.68; 9-6 at PageID.70. Further still, Plaintiff, King, and Kroening all claim to have worked with "at least five other MPCM employees who were also [erroneously] treated as independent contractors and not paid overtime," *id.*, and four former MPCM employees have already opted-in to the collective. ECF Nos. 5-1. These are not insignificant numbers, especially considering MPCM currently employs only 32 phlebotomists. ECF No. 9-9 at PageID.92–93. Taken together, this evidence shows a strong likelihood that Plaintiff is similarly situated to current and former MPCM phlebotomists, such that notice of this collective action should be approved and disseminated.

Defendants do not dispute that Plaintiff is similarly situated to current and former MPCM phlebotomists. *See* ECF No. 10. Indeed, Defendants' Response does not address the issue. *See id.* Instead, Defendants interpret *Clark* to require courts to treat motions for supervised notice like motions for preliminary injunctions, and grant notice only if the plaintiff shows a likelihood of success on the merits. *Id.* at PageID.194. Based on this interpretation, Defendants argue only that

Plaintiff and the proposed collective are *independent contractors* rather than employees, and thus have no cognizable FLSA claim. *Id.* at PageID.195–99. But Defendants' interpretation of *Clark* is incorrect.

Defendants emphasize that, in *Clark*, the Sixth Circuit noted "a district court's determination to facilitate notice in an FLSA suit is analogous to a court's decision whether to grant a preliminary injunction." *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1010 (6th Cir. 2023). But this single sentence cannot be read in isolation. The Sixth Circuit wrote:

> A district court's determination to facilitate notice in an FLSA suit is analogous to a court's decision whether to grant a preliminary injunction. Both decisions are provisional, in the sense that the court renders *a final decision on the underlying issue (whether employees are "similarly situated" here, success on the merits there)* only after the record for that issue is fully developed; yet both decisions have immediate consequences for the parties. Three of the four prongs of the preliminary-injunction standard—namely, the ones concerning "irreparable injury," "substantial harm to others," and the "public interest," are inapposite here. What the notice determination undisputedly shares in common with a preliminary-injunction decision, rather, is the requirement that the movant demonstrate to a certain degree of probability that she will prevail on the *underlying issue* when the court renders its final decision.

*Clark*, 68 F.4th at 1010–11 (6th Cir. 2023) (internal citations omitted) (emphasis added). As seen from the Sixth Circuit's language immediately following the one sentence cited by Defendants, the *analysis* for FLSA notice and preliminary injunctions are "analogous" only because both require courts to render decisions of "immediate consequence[]" without a fully developed factual record. *See id.* But the "*underlying issue*" in both analyses are *different*: when deciding on a preliminary injunction, courts analyze a likelihood of success on the merits; but when deciding on supervised notice for FLSA collective actions, courts analyze the "strong likelihood" that Plaintiff is similarly situated to the proposed collective. *See id.*

Indeed, as this Court has held post-*Clark*, "district courts within the Sixth Circuit typically *do not consider the merits* of the plaintiff's claims, resolve factual disputes, make credibility

determinations, or decide substantive issues" at the notice stage. *Doe v. Coliseum, Inc.*, No. 220CV10845TGBMJH, 2023 WL 6420792, at *2 (E.D. Mich. Sept. 30, 2023) (collecting cases) (emphasis added). This Court's review of the record is limited to addressing the sole issue of whether Plaintiff is similarly situated to the proposed collective of current and former MPCM phlebotomists in Michigan. Whether these phlebotomists are independent contractors or employees is irrelevant at this juncture.[2]

In sum, notice will be approved because Plaintiff has shown she is similarly situated to the proposed collective of "all individuals who in the State of Michigan . . . who have provided phlebotomy services for [MPCM], and who were treated as independent contractors, and thus denied overtime pay for hours worked greater than forty (40) hours per week." *Rayford v. Mobile Phlebotomy Of Central Michigan LLC*, CN 23-CV-01067 (W.D. Mich. 2023), ECF No. 1 ¶ 12, 21, 25.

---

[2] The issue is not as clear cut as Defendants suggest. Defendants argue that MPCM "ha[s] no control over how the Plaintiff, or similarly situated [phlebotomists] performed their job duties," ECF No. 10 at PageID.195, and Defendant Breasbois claims the phlebotomists "control their own schedules." *Id.* at PageID.249. But three former MPCM phlebotomists expressly claim the opposite. ECF Nos. 9-4 at PageID.66; 9-5 at PageID.68; 9-6 at PageID.70 ("I could not set my own schedule.") And Plaintiff filed an email from Defendant Breasbois which further suggests MPCM controlled the phlebotomists' schedules. *See* ECF No. 13-9 at PageID.325 ("Remember shifts are yours to cover if you are not able to do the schedule that you are given."). Further, the contract signed by MPCM and the phlebotomists evidences a fair degree of MPCM's control over other aspects of their phlebotomists' work, in addition to their personal life. *See* ECF No. 10 at PageID.201–04. MPCM required phlebotomists work a "minimum of eight hours a week" of the phlebotomist did "not have a set schedule." *Id.* at PageID.202. MPCM required phlebotomists to limit their cell phone usage. *Id.* ("You will not be seen on your phone[.]"). MPCM "suggested" that its phlebotomists "keep friendships to a minimum" because "it is better not to have the drama[.]" *Id.* (emphasis omitted). MPCM phlebotomists signed non-disclosure and non-compete agreements. *See id.* at PageID.203. MPCM required their phlebotomists to adhere to a strict dress code and uniform. *Id.* And, despite being labeled "independent contractors," MPCM phlebotomists were required to record their time through MPCM's "clock in/out program" and were required to give two weeks' notice before quitting. *Id.* at PageID.205, 207.

### IV.

Court-authorized notice of a FLSA collective action must be "timely, accurate, and informative." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Plaintiff filed a Proposed Notice and Consent Form which accurately and plainly describes the nature of the above-captioned case as follows:

> The lawsuit alleges Defendants have misclassified its employees as "independent contractors" and failed to pay the employees overtime wages of one-and-a-half times their hourly rate for time worked in excess of 40 hours per week, in violation of the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 201 *et seq*. Plaintiffs seek recovery in the form of payment from Defendants for unpaid wages and an additional equal amount as liquidated damages, as well as attorneys' fees and costs.
>
> The action was filed on May 25, 2023 against MOMOBILE PHLEBOTOMY OF CENTRAL MICHIGAN LLC (AKA MPCM SERVICES) and AMANDA BREASBOIS. Defendant denies Plaintiff's allegations and maintains that the independent contractors were not misclassified and were paid all wages to which they are entitled and do not have claims under the FLSA. The Court has not made any decision on the merits of these claims or the defenses.

ECF No. 9-10 at PageID.94–95.

The Proposed Notice also adequately explains the effect of opting-in, that Defendants are prohibited from retaliating against those who opt-in, the statute of limitations, and that those who opt-in would be represented by Plaintiff's Counsel, pursuant to a contingency fee arrangement. *Id.* at PageID.95–97.

Plaintiff seeks leave to send the Proposed Notice and Consent form via first class mail, email, and text message "[a]ll of [MPCM's] current and former phlebotomists," identified by Defendants, "who were not paid one and one-half times their regular hourly rate for hours worked in excess of 40 hours per week at any time starting three years before this Complaint was filed through the time of judgment in this matter." ECF Nos. 9 at PageID.46–47; 9-10 at PageID.95.

Plaintiff also seeks leave to send a second notice 45 days before the 90-day opt-in period closes. ECF No. 9 at PageID.48.

Defendants do not object to Plaintiff's Proposed Notice and Consent Form, nor do they object to Plaintiff's proposed process. *See generally* ECF No. 10. So, the Parties will be directed to effectuate notice using Plaintiff's Proposed Notice and Consent Form and many of the procedures Plaintiff suggests. *See* ECF No. 9-10.

## V.

Accordingly, it is **ORDERED** that Plaintiff's Motion for Supervised Notice Pursuant to 29 U.S.C. § 216(b), ECF No. 9, is **GRANTED.**

Further, it is **ORDERED** that the Parties are **DIRECTED** to effectuate notice as follows:

1. Defendants are **DIRECTED** to provide Plaintiff the names, last known postal addresses, and last known email addresses of all members of the putative FLSA collective **on or before April 15, 2024.**

2. Plaintiff is **DIRECTED** to send, at her expense, the Notice and Consent Form, ECF No. 9-10, to all identified members of the FLSA collective via first-class mail and electronic mail **on April 22, 2024.** Plaintiff may retain, at her expense, a third-party administrator to effectuate notice and may also use the U.S. Postal Service's National Change of Address database to determine if any of the collective members identified by Defendants have an updated postal address, and may mail the Notice and Consent Form to any members who have updated their postal addresses accordingly.

3. Plaintiff is **DIRECTED** to **SEND** a second Notice and Consent Form to all members of the collective identified by Defendant **on June 6, 2024,** in the same manner as provided above.

4. The opt-in period for the collective shall **TERMINATE on July 22, 2024.** Purported executed Consent Forms must be received by Plaintiff or postmarked **no later than July 22, 2024** to be effective.

5. Plaintiff is **DIRECTED** to file notice of all Opt-In Plaintiffs, along with a copy of their executed Consent Form, with this Court on a rolling basis.

**This is not a final order and does not close the above-captioned case.**

Dated: April 3, 2024                               s/Thomas L. Ludington
                                                   THOMAS L. LUDINGTON
                                                   United States District Judge